F I L E D
United States Court of Appeals
Tenth Circuit

JUN 9 2000

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff-Appellant,

v.

TYRONE BENALLY,

　　Defendant-Appellee.

No. 99-2145

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-98-329-JC)**

Kathleen A. Felton, (John J. Kelly, United States Attorney, and Kathleen Bliss, Assistant United States Attorney, District of New Mexico, with her on the briefs), Department of Justice, Washington, D.C., for Plaintiff-Appellant.

Roger A. Finzel, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellee.

Before **TACHA, HOLLOWAY** and **BRORBY**, Circuit Judges.

**BRORBY**, Circuit Judge.

　　The government raises a single issue on appeal:  whether the district court erred by departing downward five levels on the basis of aberrant behavior when

sentencing Mr. Benally for aggravated sexual abuse of a child in Indian country. Concluding none of the factors cited by the district court singly or collectively justify an aberrant behavior departure, we reverse and remand for re-sentencing.

## BACKGROUND

Mr. Benally, an American Indian, pleaded guilty to sexually assaulting a female child in 1998, when he was twenty-four years old. He admitted committing the assault when interviewed by FBI agents two days after the crime. He also provided a signed statement in which he described the assault and expressed remorse for his actions. Following his guilty plea, Mr. Benally sought a psychological evaluation for the purpose of seeking a downward departure. His sealed motion for downward departure quoted heavily from that evaluation, which concluded, generally, that Mr. Benally is more accountable and therefore potentially a better candidate for rehabilitation than is the typical sex offender.

The presentence report calculated Mr. Benally's total offense level as 28, accounting for a three-level reduction for acceptance of responsibility. Mr. Benally's criminal history category was I, thus establishing a sentencing guideline range of seventy-eight to ninety-seven months. The original presentence report found no basis for a downward departure; however, following

the defense motion for departure, the probation officer amended the original report to recommend a downward departure on grounds of aberrant behavior. At sentencing, the district court adopted the factual findings and guideline applications in the presentence report, departed downward by five levels, to a range of forty-six to fifty-seven months, and imposed a sentence of forty-eight months. The following findings are particularly relevant to the issue on appeal:

> The Court finds the defendant's conduct in the instant offense was aberrant behavior based on the following: The defendant has no prior documented information of any sexual deviancy. The defendant has made significant post arrest rehabilitation efforts which include mental health testing to determine the cause of his involvement in the instant offense and to prevent its recurrence. The defendant has acknowledged his alcohol intoxication may have contributed to the instant offense and has abstained from alcohol consumption since the instant offense.

> Further, the defendant has cooperated with and assisted law enforcement in investigation of the instant offense by admitting his culpability [and] timely confess[ing] .... These factors, when combined together, remove this case from the heartland of the guidelines and allows the Court to impose a sentence outside of the applicable guideline range.

## ANALYSIS

The government contends the district court abused its discretion because the "aberrant behavior" departure does not apply to serious, violent felonies, like aggravated sexual abuse, for which probation is statutorily unavailable. Even if a departure for aberrant behavior is generally permissible for serious, violent

felonies, the government argues the district court erred by relying on a combination of factors that are either disallowed or already taken into account by the guidelines.  Furthermore, according to the government, none of the factors the district court relied on is present to such an extraordinary degree as to remove Mr. Benally from the heartland of the guideline range.  The government concludes its argument by asserting that the district court's underlying factual findings are clearly erroneous.

We begin by rejecting the government's invitation to prohibit the sentencing courts' consideration of an aberrant behavior departure in cases involving serious, violent felonies for which probation is statutorily unavailable.  Such a prohibition would conflict with existing precedent.  Although this court has never addressed the appropriate scope of the aberrant behavior factor for downward departure  *vis a vis*  the type of punishment available, the court consistently has taken a broad, rather than restrictive, approach to the consideration of aberrant behavior in sentencing.

Post-*Koon*,[1] we unequivocally have held, "'[t]he aberrance of a criminal

_____

[1]  *Koon v. United States*, 518 U.S. 81 (1996), is the seminal United States Supreme Court case defining the proper analysis for making departure decisions. The initial inquiry in such an analysis is whether a particular feature, like aberrant

-4-

act is an encouraged factor for departure.'" *United States v. Garcia*, 182 F.3d 1165, 1176 (10th Cir.), *cert. denied*, 120 S. Ct. 448 (1999) (quoting *United States v. Talk*, 158 F.3d 1064, 1072 (10th Cir. 1998), *cert. denied*, 525 U.S. 1164 (1999)). Without limitation,"[u]nder our case law, the aberrant nature of a criminal defendant's offense conduct may properly be considered as a mitigating factor in a downward departure decision." *United States v. Jones*, 158 F.3d 492, 500 (10th Cir. 1998). Accordingly, we have upheld downward departures based on aberrant behavior even in violent and/or serious cases in which probation was not available or seriously considered. *See Garcia*, 182 F.3d at 1168, 1177 (cocaine trafficking, possession with intent to distribute); *United States v. Tsosie*, 14 F.3d 1438, 1440, 1441-42 (10th Cir. 1994) (voluntary manslaughter). This precedent counsels against adopting the restriction the government advocates.[2]

---

behavior, is a "forbidden," "encouraged," "discouraged," or "unmentioned" factor in the sentencing guidelines. *Id.* at 94-96.

[2] We acknowledge the Eighth Circuit has taken a different approach. *See United States v. Kalb*, 105 F.3d 426, 429 (8th Cir. 1997) (for a serious crime that cannot warrant probation, aberrant behavior is an unmentioned, not an encouraged factor under *Koon*). However, our holding is not without support among the circuits. *See United States v. Withrow*, 85 F.3d 527, 530 (11th Cir.) (noting that prior to *Kalb*, all circuits that had addressed the issue concluded "single acts of aberrant behavior were excluded from consideration in the formulation of the guidelines and thus might justify sentences below the guideline range even in cases where probation is not a viable option."), *cert. denied*, 519 U.S. 944 (1996); *United States v. Grandmaison*, 77 F.3d 555, 561 (1st Cir. 1996) (downward departures for aberrant behavior "may be employed whether the sentence computed involves imprisonment or merely probation"); *see also Kalb*, 105 F.3d

Having declined to categorically limit the consideration of aberrant behavior, we proceed to evaluate the downward departure applied in this case. In reviewing a departure from the sentencing guidelines we evaluate:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

*United States v. Collins*, 122 F.3d 1297, 1303 (10th Cir. 1997).

All four inquiries are subject to a "unitary abuse of discretion standard," *Collins*, 122 F.3d at 1303, understanding that "'[a] district court by definition abuses its discretion when it makes an error of law.'" *United States v. Fagan*, 162 F.3d 1280, 1283 (10th Cir. 1998) (quoting *Koon*, 518 U.S. at 100). Applying this standard, we need not defer to the district court's determination of an issue of law, such as that presented by the first inquiry pertaining to the permissibility of departure factors. *See Collins*, 122 F.3d at 1303. However, we must give substantial deference to the district court when making the second inquiry, because the heartland determination is primarily a factual inquiry. *See*

---

at 431-32 (Bright, J. dissenting) (aberrant behavior is an encouraged, rather than an unmentioned factor).

-6-

*id*. at 1302-03. Similarly, our review of the underlying factual determinations relevant to the third inquiry is limited to clear error. *See id*. at 1302. As outlined above, the government hinges its argument on the first three inquiries. We dispose of all issues in the context of the first two inquiries.

## I.

*Permissible Departure Factors:  Did the district court rely on a combination of factors that are either disallowed or already taken into account by the guidelines?*

In determining what constitutes aberrant behavior in a particular case, a sentencing court should evaluate the totality of circumstances. *See Garcia*, 182 F.3d at 1176-77;  *Jones*, 158 F.3d at 500;  *Tsosie*, 14 F.3d at 1441. The totality of circumstances approach does not, however, permit a sentencing court to base its aberrant behavior finding on otherwise impermissible factors. *See United States v. Bush*, 126 F.3d 1298, 1301 n.2 (11th Cir. 1997) ("'aberrant behavior' departure should not be utilized as a 'back door' through which [otherwise inappropriate] factors may enter into the sentencing determination"), *cert. denied*, 522 U.S. 1141 (1998). "Impermissible factors include forbidden factors, discouraged factors that are not present to some exceptional degree, and encouraged factors already taken into account by the applicable guideline that are not present to some exceptional degree." *Collins*, 122 F.3d at 1303. The

question at this juncture, then, is whether the specific circumstances on which the district court relied are indeed permissible under the guidelines.

The district court cited the following circumstances, "combined together," in support of its conclusion Mr. Benally's conduct represented aberrant behavior: (1) the absence of "prior documented information of any sexual deviancy"; App. 64-65); (2) Mr. Benally's "significant post arrest rehabilitation efforts"; (3) Mr. Benally's "acknowledg[ment] his alcohol intoxication may have contributed to the instant offense"; and (4) Mr. Benally's cooperation and assistance. The government claims (1) the district court's reliance on the lack of prior documented information of any sexual deviancy represents a departure based on criminal history, and (2) the court's reliance on Mr. Benally's recognition alcohol may have contributed to his offense represents a departure based on intoxication – both prohibited departure factors. The government further claims the sentencing guidelines have already taken into account post-arrest rehabilitation and acceptance of responsibility, and Mr. Benally has demonstrated neither circumstance to an exceptional degree.

A.    Prior Conduct

By definition, Mr. Benally's sex offense could not be considered aberrant

if he had a documented history of similar deviant conduct. The district court therefore appropriately considered whether there was any evidence Mr. Benally had before engaged in sexually deviant behavior. The logic or necessity of this initial inquiry into prior conduct does not, however, render the lack of any such documented history a permissible ground for departure under the aberrant behavior umbrella.

We have, on at least two occasions, upheld downward departures for aberrant conduct based, in part, on the fact the defendant had not been engaged in any prior criminal activity. *See Tsosie*, 14 F.3d at 1441; *United States v. Pena*, 930 F.3d 1486, 1494 (10th Cir. 1991). Those dispositions, however, preceded the refinement of our departure analysis brought about by *Koon*. Having now been squarely presented with the issue of whether the lack of prior criminal conduct is a permissible factor in this specific sentencing context, we hold that the factors supporting an aberrant behavior departure must involve something other than an act which is merely a first offense. Stated differently, the permissible factors in this context must illustrate some unique circumstance – some element of abnormal or exceptional behavior – beside the fact the defendant has never before committed the crime. *See United States v. Carey*, 895 F.2d 318, 325 (7th Cir. 1990).

This holding stays true to our commitment to evaluate all the *unique* circumstances relevant to the aberrant nature of the defendant's conduct (prior good deeds, efforts to mitigate the effects of the crime, pecuniary gain, charitable activities, etc.), rather than focusing on spontaneity and thoughtlessness. *Compare Jones*, 158 F.3d at 500, *Pena*, 930 F.2d at 1494, *and Grandmaison*, 77 F.3d at 562-63, *with United States v. Andruska*, 964 F.2d 640, 645-46 (7th Cir. 1992). Most important, it is consistent with our precedent prohibiting a sentencing court from using a lack of criminal history as a basis for downward departure.[3] *United States v. Gallegos*, 129 F.3d 1140, 1145 (10th Cir. 1997). If a departure based on lack of a criminal history is forbidden, we believe it is likewise impermissible to base an aberrant behavior departure, in whole or in part, on a lack of prior criminal conduct. Consequently, the district court erred by relying on the absence of "prior documented information of any sexual deviancy" when granting Mr. Benally a downward departure.

B.  Post-Arrest Rehabilitation

---

[3] "The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate." U.S.S.G. § 4A1.3, p.s.; *see also United States v. Maldonado-Campos*, 920 F.2d 714, 719 (10th Cir. 1990).

The district court concluded Mr. Benally's criminal conduct was aberrant behavior, in part, because he has made "significant post arrest rehabilitation efforts which include mental health testing to determine the cause of his involvement in the instant offense and to prevent its recurrence." The government correctly points out post-offense rehabilitation is accounted for in the context of an acceptance of responsibility adjustment under U.S.S.G. § 3E1.1, comment. (n.1(g)), and thus may not serve as a basis for departure unless it is present to an exceptional degree. *See Jones*, 158 F.3d at 502-03. The inquiry required to resolve whether Mr. Benally's post-arrest rehabilitation efforts were exceptional and support a finding of aberrant behavior is necessarily a factual one, which we review below under Section II.A. *See id.* at 503; *United States v. Contreras*, 180 F.3d 1204, 1210 (10th Cir.), *cert. denied*, 120 S. Ct. 243 (1999).

C. Intoxication and Post-Arrest Sobriety

In addition to Mr. Benally's post-arrest rehabilitation efforts, the district court deemed it important Mr. Benally acknowledged his alcohol intoxication may have contributed to the instant offense and abstained from alcohol consumption since the offense. To the extent the court may have departed downward on the basis of intoxication, as the government contends, the government is correct that a departure on such grounds is prohibited by the

guidelines.  U.S.S.G. § 5K2.13, p.s.

Mr. Benally contends the district court instead relied on these facts as evidence he "had gained insight that alcohol abuse played a part in his offense and that abstaining from alcohol since the date of the offense was indicative of his sincere resolve not to repeat that conduct."  Viewed in this context, the findings of intoxication and post-arrest sobriety are not patently impermissible under the guidelines.  *See Koon*, 518 U.S. at 109 ("[A] federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor.").  However, that does not mean those findings are relevant or sufficient to support an aberrant behavior departure. Here again, the inquiry required to resolve whether those findings support the district court's ultimate conclusion that Mr. Benally's conduct was aberrational is necessarily a factual one, which we review below under Section II.B.  *See Contreras*, 180 F.3d at 1210.

D.  Cooperation and Assistance

The district court cited Mr. Benally's cooperation and assistance in the investigation of his crime by "admitting his culpability," and by making a "timely

confession," as factors that, together with the aberrant behavior finding, supported a downward departure. The government argues the guidelines "allow a downward departure for 'voluntary disclosure' of an offense, but only when the defendant's admission occurs before the discovery of the offense, a circumstance clearly not present here." *See* U.S.S.G. § 5K2.16, p.s. The government further points out the guidelines expressly account for acceptance of responsibility, U.S.S.G. § 3E1.1, and Mr. Benally in fact received an extra point available under U.S.S.G. § 3E1.1(b) for acceptance of responsibility that saves the government resources, thereby reducing his offense level by three instead of two points.

Because the guidelines expressly account for cooperation and assistance, this factor is not categorically prohibited. It is best categorized as an encouraged factor, which is impermissible only if it is not present to an exceptional degree. *Collins*, 122 F.3d at 1303. We review whether Mr. Benally's cooperation and assistance was indeed exceptional in part II.C. of our analysis.

II.

*Are the permissible factors the district court relied on present to such an extraordinary degree they remove Mr. Benally from the heartland of the guideline range?*

Having concluded the circumstances pertaining to Mr. Benally's post-arrest rehabilitation, intoxication, post-arrest sobriety, and cooperation and assistance are legally permissible factors under the guidelines, we shift our focus to whether those circumstances are factually appropriate grounds for departure, *i.e.*, are those circumstances present to such an exceptional degree they go beyond the contemplation of the applicable guidelines or otherwise remove Mr. Benally's case from the heartland of the guideline range by demonstrating aberrant behavior. *Koon*, 518 U.S. at 109. We review the district court's findings in this context for abuse of discretion. *See Contreras*, 180 F.3d at 1210.

A. Post-Arrest Rehabilitation

The district court cited Mr. Benally's mental health testing as the specific "rehabilitative" reason for departure. Mr. Benally argues the psychological testing supports the court's downward departure on grounds of aberrant behavior because it indicates (1) he is not a pedophile, (2) his offense resulted from a personality disorder, and (3) he is amenable to treatment.

We perceive two relevant questions as to Mr. Benally's psychological testing: (1) did Mr. Benally undergo an exceptional degree of rehabilitative effort prior to sentencing sufficient to take him outside the heartland contemplated by the acceptance of responsibility adjustment under U.S.S.G. § 3E1.1; and (2) do the test results establish Mr. Benally's conduct was indeed aberrant? Having studied the arguments and reviewed the record in its entirety, we answer both questions in the negative.

The government correctly notes Mr. Benally underwent a psychological evaluation for the specific purpose of supporting his downward departure motion. While both the psychological report and presentence report suggest Mr. Benally has requested appropriate treatment and is interested in learning more about himself and why he committed such an offense, there is no real showing his attitude or future treatment regimen differs substantially from that of other incarcerated sex offenders. The evidence of record is limited to (1) the psychologist's opinion that certain of Mr. Benally's actions, primarily the fact he immediately confessed to the crime, are not typical of the general sex offender population and " *indicate* [] that he is much more accountable and therefore *potentially* more amendable to rehabilitation than is the typical sex offender" (emphasis added)), and (2) the probation officer's opinion Mr. Benally's post-

arrest conduct may be viewed as rehabilitative and, when combined with other factors, removes his case from the heartland of the usual sexual offense cases seen in the District of New Mexico. These equivocal and conclusory statements simply are not enough. The acceptance of responsibility guideline, U.S.S.G. § 3E1.1, specifically contemplates an adjustment for "post-offense rehabilitative efforts ( *e.g.*, counseling or drug treatment)." U.S.S.G. § 3E1.1 comment. (n.1(g)). Mr. Benally received an adjustment for acceptance of responsibility. The absence of additional evidence or explanation as to why Mr. Benally's rehabilitative effort went beyond that contemplated by U.S.S.G. § 3E1.1 renders a departure on this basis invalid.

Mr. Benally understandably relies on those portions of his psychological evaluation which intimate his sexual assault of a young child was out of character for him and atypical of other sex offenders/pedophiles. To the extent the psychologist concluded Mr. Benally's sex offense was a departure from Mr. Benally's normal behavior pattern, we note the psychologist relied on behavioral and historical facts as provided by Mr. Benally himself. Those conclusions must therefore be weighed accordingly. More important, we must look beyond the psychologist's summary conclusions to underlying substantive portions of the evaluation, which illustrate troubling behavior patterns and clear similarities

between Mr. Benally's crime and typical sex offender behavior.

For example, Mr. Benally exhibited a response profile on the MMPI-II commonly observed in persons who have had behavioral and legal problems. Test results also indicated Mr. Benally "may be rather amoral, which is consistent with the opportunistic nature of [his] offense." "His behaviors may be unpredictable and at times inappropriate, because he does not place the same degree of importance on the social appropriateness of his behavior in comparison with most people." "[H]e appears to have a reservoir of anger, which tends to influence his perception of the world." Mr. Benally's responses to sexual offense scales exhibited "a high degree of commonality between his pattern and responses given by other persons who have committed child molestation," and "a moderate degree of commonality with persons who have committed more intrusive rapes as compared with typical child molestation. Overall, his responses show a high degree of similarity with others who openly acknowledge having committed inappropriate sexual acts." Finally, Mr. Benally exhibited sexual arousal responses not usually seen in non-offending males. Viewed as a whole, we conclude the psychological report does not set Mr. Benally's crime apart from his own behavior patterns or those of other sex offenders to the degree necessary to support an aberrant behavior departure.

In sum, despite the fact the district court found Mr. Benally made "significant post arrest rehabilitation efforts," our careful review of the record does not reveal evidence of an exceptional degree of effort beyond that accounted for in the guidelines. Moreover, the results of Mr. Benally's psychological testing do not establish his conduct was aberrant. Accordingly, on these facts, we hold the district court abused its discretion by departing downward.

B. Intoxication and Post-Arrest Sobriety

Mr. Benally does not argue it was abnormal or in any way exceptional for him to be intoxicated. Nor did the district court indicate Mr. Benally's intoxication at the time of the offense was out of the ordinary when compared to his typical behavior. The record reveals no unusual circumstance that might explain why Mr. Benally was intoxicated when he assaulted the young girl. To the contrary, the record indicates Mr. Benally has a long history of alcohol abuse, with associated blackouts and an admitted loss of control over his behavior. Mr. Benally must have recognized the destructive nature of his alcohol abuse prior to the assault, as evidenced by his previous attempts at recovery. Under these circumstances, we fail to see how Mr. Benally's intoxication or his acknowledgment that alcohol played a role in his offense could possibly support a departure on grounds of aberrant behavior.

Moreover, we agree with the government Mr. Benally's post-arrest sobriety reflects little more than his compliance with the conditions of his release to a halfway house. As noted above, Mr. Benally has a prolonged history of alcohol abuse and various attempts at treatment, with intervening periods of sobriety. Viewing the totality of circumstances, Mr. Benally's post-arrest sobriety is not convincing evidence of a voluntary or unusual effort sufficient to establish his criminal conduct was an aberration or to otherwise support the district court's departure.

C. Cooperation and Assistance

The district court made no factual findings and provided no support for its conclusion Mr. Benally's cooperation and assistance supported a downward departure. There is no evidence Mr. Benally voluntarily disclosed his crime. Rather, the record discloses he confessed his crime after the crime was reported and FBI agents contacted him. In addition, he provided a signed statement recounting the offense and expressing remorse; he also timely notified authorities of his intention to enter a guilty plea. For these acts of cooperation and assistance, Mr. Benally received a three-point adjustment to his offense level pursuant to U.S.S.G. § 3E1.1(b).

The government asserts it was incumbent on the sentencing court to explain why Mr. Benally's admission of culpability and timely confession were so extraordinary that they went beyond the cooperation and assistance contemplated by the acceptance of responsibility guideline at U.S.S.G. § 3E1.1(b). We agree. *See United States v. Gaither*, 1 F.3d 1040, 1042-43 (10th Cir. 1993). Given the absence of any explanation or evidentiary support for the district court's conclusion, we deem the court's reliance on Mr. Benally's cooperation and assistance as grounds for downward departure to be an abuse of discretion.

CONCLUSION

Relying on comment to U.S.S.G. § 5K2.0, Mr. Benally argues that "[a] combination of circumstances or offender characteristics may remove a case from the heartland." It is true, there occasionally may be

> an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. *However, the Commission believes that such cases will be extremely rare*.

U.S.S.G. § 5K2.0 comment. (emphasis added). This is not one of those extremely rare cases. As explained above, the factor pertaining to prior conduct was legally

-20-

impermissible, and the factors pertaining to intoxication, post-arrest sobriety and rehabilitation, and cooperation and assistance were factually inappropriate. "Combining the legally impermissible and factually inappropriate grounds for departure cannot make this case one of the 'extremely rare' cases contemplated by § 5K2.0." *Contreras*, 180 F.3d at 1213. We **REVERSE** the district court's decision to depart downward and **REMAND** for re-sentencing consistent with this opinion.

**HOLLOWAY**, Circuit Judge, dissenting

The majority opinion relies heavily on reasoning that: (1) every fact which the district court relies on to determine whether the Defendant's conduct is aberrational must independently constitute a permissible basis for departure under the guidelines, and (2) the facts in this case do not warrant a departure. I am convinced that the former conclusion disregards a well-developed body of Tenth Circuit precedent and that the latter conclusion disregards the district court's role as the finder-of-facts, violating Koon v. United States, 518 U.S. 81, 97 (1996). Accordingly, I respectfully dissent. I would affirm the findings and ruling of the trial judge.

**I**

First, the majority opinion impermissibly requires every factor concerning aberrance to independently constitute a permissible basis for departure. We have noted that "Impermissible factors include forbidden factors, discouraged factors that are not present to some exceptional degree, and encouraged factors already taken into account by the applicable guideline that are not present to some exceptional degree." United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997). However, the factor at issue here – aberrational behavior – is neither prohibited nor already taken into account. The question that the district court faced was, factually, whether the Defendant's conduct was aberrational. In making that factual determination, the district court can rely on such

evidence that it believes establishes aberrant behavior. [1]

Indeed, this court has on several occasions analyzed and applied the aberrant behavior departure both before and after the June 1996 Koon decision. See e.g. Garcia, 182 F.3d at 1176-77 (1999); United States v. Jones, 158 F.3d 492, 500 (10th Cir. 1998); Talk, 158 F.3d at 1072-73 (1998); ("The aberrance of a criminal act is an encouraged factor for departure."); Tsosie, 14 F.3d at 1441-43 (1994); United States v. Peña, 930 F.2d 1486, 1494-95 (10th Cir. 1991). In none of the cases did we analyze separately each factor to determine whether it independently constituted a permissible basis for departure under the guidelines. Instead, we focused solely on the totality of circumstances to determine

---

[1] This court has not required each factor to independently justify a departure outside of the aberrational behavior inquiry. See Jones, 158 F.3d at 501 ("While Mr. Jones' support in the community is insufficiently 'extraordinary' to support a departure on this basis alone, the district court did not abuse its discretion by relying on this factor as one of several grounds supporting a departure."); United States v. Contreras, 180 F.3d 1204, 1213 (10th Cir. 1999) (noting that combining otherwise impermissible factors to support a departure should be "extremely rare").

The majority opinion recognizes that an aberrant behavior departure may apply in non-probation cases. See United States v. Garcia, 182 F.3d 1165, 1168 (10th Cir.), cert. denied, 120 S. Ct. 448 (1999) (upholding an aberrant behavior departure for a Defendant that received an 18 month prison sentence), cert. denied, 120 S. Ct. 448 (1999); United States v. Tsosie, 14 F.3d 1438, 1440, 1441-42 (10th Cir. 1994) (upholding an aberrant behavior departure for a Defendant that received a 4 month prison sentence). The opinion acknowledges that an aberrant behavior departure may apply to violent felonies. See United States v. Talk, 158 F.3d 1064, 1066, 1072-73 (10th Cir. 1998) (suggesting that an aberrant behavior departure would apply to a Class A, aggravated sexual assault), cert. denied, 525 U.S. 1164 (1999); Tsosie, 14 F.3d at 1440, 1441-42 (holding that the aberrant behavior departure applied to a manslaughter conviction).

whether the conduct at issue was aberrational for the Defendant.  See, e.g., Tsosie, 14 F.3d

at 1441 ("The totality of circumstances must be viewed to see whether the offense fits

within Tsosie's normal conduct or if it is a complete shock and out of character.").[2]

Here the trial court made such a finding, concluding that Defendant's conduct was

aberrational, in totality, because: (1) Defendant had no history of sexual deviancy,[3] and (2)

Defendant made significant post arrest rehabilitation efforts: he both stopped using

alcohol, which may have contributed to the offense, and he sought mental health testing to

determine the cause of the assault and to prevent him from engaging in future assaults.  In

totality, the district court did not abuse it discretion by holding that these facts demonstrate

the aberrational nature of the Defendant's conduct.[4]  Compare Jones, 158 F.3d at 499

---

[2]  The opinion holds that "we believe it is likewise impermissible to base an aberrant behavior departure, in whole or in part, on a lack of prior criminal conduct."  See Majority Op. at 10.  Both before and after Koon, this court has upheld aberrant behavior departures because of a lack of prior criminal conduct.  See Jones, 158 F.3d at 499-500 (upholding the district court's finding that the Defendant's conduct was aberrational when he "basically had been law-abiding until age 35, when his marriage disintegrated"); Tsosie, 14 F.3d at 1442 (holding that the Defendant's conduct was aberrational "in that he had no prior criminal history").

[3]  The opinion focuses on Defendant's lack of a criminal history.  The district court, however, did not.  Instead, the district court held that Defendant lacked a history of sexual deviancy.  That holding embraces both criminal deviancy and non-criminal sexual deviancy.  Therefore, factually, the opinion is incorrect in concluding that the district court impermissibly relied on Defendant's lack of criminal history as a basis for the departure.

[4]  Indeed, it is hard to imagine a stronger finding of aberrance: the district court found  that the crime was out of character for him (a lack of previous sexual deviancy) and that he was unlikely to commit the crime again (rehabilitation efforts).

-3-

(upholding an aberrant behavior departure when "[t]he Defendant . . . had been law abiding until age 35, when his marriage disintegrated"); Garcia, 182 F.3d at 1176 (upholding an aberrant behavior departure when "this Defendant has a minimal criminal history. The Defendant here has numerous letters of support from the community attesting to his honesty and integrity in the manner in which he conducted his business in Las Cruces, New Mexico for many years. Several letters confirmed the Defendant's sympathy for people in need. The paid informant used this to entice this previously law-abiding member of the community."). Tsosie, 14 F.3d at 1442 (upholding an aberrant behavior departure when the Defendant "had no prior criminal history"); Peña, 930 F.2d at 1494 (upholding an aberrant behavior departure when the "Defendant has no prior record of drug abuse, nor other felony criminal convictions and has held long-term employment. She poses no threat to the public and would be justly punished, sufficiently deterred and adequately rehabilitated by a sentence of probation with community confinement as a special condition").

The government has argued that the aberrant behavior departure applies only when the crime is spontaneous and without planning and some courts have adopted such a rule. See United States v. Pickering, 178 F. 3d 1168, 1172 (11th Cir.) ("Such an act is not established unless ... the crime was a spontaneous and thoughtless act."), cert. denied, 120 S. Ct. 433 (1999); United States v. Paster, 173 F.3d 206, 212 (3d Cir. 1999) ("[A]berrant behavior must involve a lack of planning; it must be a single act that is spontaneous.").

We, however, are <u>not</u> one of those courts. In <u>Garcia</u> we said: "The government argues that in order for the aberrational behavior departure to apply, the offense must be spontaneous, without substantial planning, and be completely aberrant from Defendant's background and personality. As a result, the government asserts, Garcia's carefully planned cocaine transaction cannot be deemed aberrational. However, <u>this circuit has never held that application of the aberrant behavior downward departure requires the crime at issue to have been spontaneous</u>." <u>Garcia</u>, 182 F.3d at 1176 (emphasis added).

In sum, based on the totality of the circumstances, the district court's finding that Defendant's act was aberrational so as to warrant a downward departure was not clearly erroneous or an abuse of discretion.

## II

The majority opinion also impermissibly disregards the district court's findings of fact on critical points. The district court identified two permissible bases for departure: (1) Defendant's post arrest rehabilitation efforts (psychological testing), which were extraordinary, and (2) Defendant's post arrest abstention from alcohol.[5] <u>See</u> Majority Op.

---

[5] The district court also cited Defendant's cooperation with law enforcement. The district court, however, did not rely on this factor as evidence of the aberrational nature of Defendant's conduct but, instead, as a further factor removing the case from the heartland. This court has previously approved the use of such other marginal factors when combined with aberrant behavior. <u>See</u> <u>Peña</u>, 930 F.2d at 1495 (noting that "family ties and responsibilities and community ties are not <u>ordinarily</u> relevant in determining whether a sentence should be outside the guidelines," but holding that "these responsibilities, combined with the aberrational nature of Peña's conduct, justified the departure . . . .") (citation and internal quotation marks omitted) (emphasis in original);

at 11-13; see also Jones, 158 F.3d at 503.  The opinion concludes that the Defendant

supported neither basis for departure.  I disagree.

Congress did not choose to make the appellate court the finder-of-facts.  This court

has noted:

> We are convinced the determination of whether an individual
> Defendant's offense conduct is aberrational, like the decision to depart,
> requires consideration of unique factors not readily susceptible of useful
> generalization.  The district court is in the better position to determine
> whether the Defendant's offense conduct is out of character for that
> individual.  Accordingly, the district court's resolution of this largely factual
> question is due substantial deference.

Jones, 158 F.3d at 500 (emphasis added);  (same); Garcia, 182 F.3d at 1176 (same).  This

is the teaching of the Supreme Court's decision in Koon:

> A district court's decision to depart from the Guidelines, by contrast,
> will in most cases be due substantial deference for it embodies the traditional
> exercise of discretion by a sentencing court.  Before a departure is permitted,
> certain aspects of the case must be found unusual enough for it to fall
> outside the heartland of cases in the Guideline.  To resolve this question, the
> district court must make a refined assessment of the many facts bearing on
> the outcome, informed by its vantage point and day-to-day experience in
> criminal sentencing.

518 U.S. at 98 (emphasis added).  Accordingly, the Court in Koon held that "[t]he

appellate court should not review the departure decision de novo, but instead should ask

_____

see also Tsosie, 14 F.3d at 1441-42 ("Tsosie's steady employment, economic support of
his family, combined with his aberrational conduct . . . were properly considered by the
court in departing downward."); United States v. Gallegos, 129 F.3d 1140, 1146 (10th
Cir. 1997) ("In both Peña and Tsosie, the family circumstances alone were not
extraordinary;  rather, the departures were based primarily on aberrant behavior,
supported by family responsibilities.")

whether the sentencing court abused its discretion." Id. at 91.

A

The opinion denigrates the Defendant's post arrest efforts and accepts the government's suggestion that Defendant merely "underwent a psychological evaluation for the specific purpose of supporting his downward departure motion." Majority Op. at 15. However, the presentence report stated Defendant "expressed interest in learning why he committed such an offense and what kind of treatment might help him learn more about himself with the goal being that he never commit any such offense." I R. Tab 24 at 4-5. After the tests determined that he was susceptible to treatment, Defendant expressed a desire to obtain treatment. See Addendum to the PSR ("The Defendant has participated in mental health evaluations and he is requesting appropriate treatment to address his needs."). Contrary to the opinion's inference, unfavorable to Defendant, the district court found specifically: "The Defendant has made significant post arrest rehabilitation efforts which include mental health testing to determine the cause of his involvement in the instant offense and to prevent its recurrence." (App. at 65) (emphasis added).

The majority opinion in no way demonstrates why this finding about Defendant's purpose in his post arrest rehabilitation efforts is clearly erroneous. The clearly erroneous standard applies, of course, to findings on testimony observed by the judge and to his findings based on documentary records before him or inferences from other facts. Anderson v. Bessemer City, 470 U.S. 56, 574 (1984).

The opinion says further that "there is no real showing his attitude or future treatment regimen differs substantially from that of other incarcerated sex offenders." Majority Op. at 15. However, the evidence before the district court included proof that "the defendant submitted to a rather intrusive and invasive psychological analysis. . . ." I R. Tab 24 at 5. The public defender represented that "Counsel has not had a client previously nor has anyone else at the Office of the Federal Public Defender had a client who has so readily sought out psychological testing and analysis in an effort to try and not only learn why he committed the offense but to prevent its reoccurrence." Id. Based on the evidence, the district court was not clearly in error in finding that the Defendant "made significant post arrest rehabilitation efforts which include mental health testing to determine the cause of his involvement in the instant offense. . . ." (App. at 65) (emphasis added).

The opinion reviewed the psychological report and determined that the report did not demonstrate that Defendant's conduct was out of character for him. However the psychologist's report states that: Mr. Benally's case has several characteristics which indicate that his offense was a departure from his normal pattern of behavior; that although he has a clearly established pattern of problematic behavior suggesting a personality disorder diagnosis, his behavior has not included such abrupt violent offenses as the current matter. The psychologist noted that when Defendant was first interviewed by the F.B.I. he immediately gave a confession highly consistent with the complaint made against

him.  The psychologist concluded this is not typical of the population of sexual offenders and indicates he is much more accountable and therefore potentially more amenable to rehabilitation than is the typical sex offender.

Therefore the district court  was not clearly erroneous, nor did it abuse its discretion, by finding that the Defendant engaged in "significant" post arrest rehabilitation efforts and that Defendant's offense conduct was "aberrant behavior."  App. at 64, 65.

**B**

The majority opinion also dismisses Defendant's post arrest sobriety, concluding that it "reflects little more than his compliance with the conditions of his release to a halfway house."  Op. at 19.  However, this court has held that "scrupulously follow[ing] the conditions of release," when combined with other factors, may warrant a departure. Jones, 158 F.3d at 503.  Therefore, the opinion's rejection of Defendant's post arrest sobriety rests on an adverse factual inference, contrary to that permissibly drawn by the trial judge.  Second, the opinion's inference is factually inaccurate.  Defendant stated that he abstained from alcohol from the date that he committed the offense.  Although it is unclear from the record when this condition of release was imposed on Defendant, the condition was not imposed on the day he committed the offense.  Accordingly, there was some period of time when Defendant abstained from alcohol entirely of his own volition.  Thus, the district court did not abuse its discretion by believing the Defendant abstained

from alcohol for rehabilitative reasons rather than because of the court's order.[6] Thus, the district court did not abuse its discretion by concluding that the Defendant's post arrest sobriety, when combined with the other evidence, warranted a departure.

In sum, the majority's dissection of the district court's decision departs from our precedents and wrongly supplants the judge's assessment from his vantage point with its own inferences, never having seen or heard the Defendant. The majority opinion thus disregards the Supreme Court's teaching that "the discretion of a sentencing judge...should not be displaced by the discretion of an appellate court." Koon, 518 U.S. at 97 (quoting S. Rep. No. 225, at 150): "Congress did not intend, by establishing limited appellate review, to vest in appellate courts wide-ranging authority over district court sentencing decisions." Accordingly I must respectfully dissent.

---

[6] The opinion suggests that Defendant's previous failed attempts to abstain from alcohol suggest that the district court should not have relied on his current attempt to abstain. See Majority Op. at 18-19. The district court, however, was able to judge Defendant's credibility and to determine whether he was sincere in his effort to quit this time. The district court found that he was. The opinion has not demonstrated that the finding was clearly erroneous.